*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* W. W. ELKINS, Minor.

UNPUBLISHED
April 28, 2022

No. 357925
Branch County Circuit Court
Juvenile Division
LC No. 19-005937-NA

Before: SWARTZLE, P.J., and K. F. KELLY and REDFORD, JJ.

PER CURIAM.

Respondent appeals as of right the order terminating his parental rights to his minor child WE. We vacate the order and remand for proceedings consistent with this opinion.

## I. BACKGROUND

Petitioner took custody of WE because WE's mother was homeless and could not provide for WE's basic needs.[1] Respondent was later determined through DNA testing to be WE's biological father. Petitioner submitted an amended petition alleging that respondent was incarcerated for breaking and entering a vehicle and fourth-degree criminal sexual conduct.

Petitioner did not know that he was WE's father until the DNA test. At that time petitioner was already incarcerated; he has never met WE. Additionally, respondent has not helped WE's caregivers—who have cared for WE for most of his life—provide for WE's wellbeing. Due to our state government's response to the Covid-19 pandemic, respondent was not able to participate in services throughout this case. Nevertheless, petitioner moved to terminate respondent's parental rights. The petition identified three statutory grounds to terminate respondent's parental rights: MCL 712A.19b(c)(*i*), (g), and (j). On July 6, 2021, the trial court terminated respondent's parental rights to WE under all three statutory grounds, reasoning that termination was appropriate given respondent's incarceration until at least October 2022, his lack of involvement in WE's life, and WE's bond with his caregivers. Specifically, regarding subsection (c)(*i*) the trial court concluded:

---

[1] WE's mother is not a party on appeal.

[Respondent] has never seen his child, and the Court is clearly convinced that [WE] would not even know that he's his father. So the conditions that existed at the time of the filing of the petition was that [respondent] was in jail . . . . And he's still in prison . . . . 2022, I believe, would potentially be his earliest out date in October at some point.

The Court is clearly convinced that the conditions that existed at the time of the filing of the petition with regards to [respondent] continue to exist. The question is whether they'll be rectified within a reasonable time considering the child's age. And I am certainly aware of the *In Re Mason*[2] case, and that incarceration alone, in and of itself, is not enough. But I'm not convinced that really [respondent] has done anything which would convince this Court within a reasonable time he'd be in a position to take care of his child.

I mean, there may be some contradictory testimony about whether or not he's actually reached out to have contact with the child. Mr. Klein's [a Children's Services Specialist] testimony is that essentially [respondent] has not done anything. [Respondent] has indicated that he was under the impression that he wasn't able to do that, but Mr. Klein indicated that he hasn't made any attempts to do so. It also appears [respondent] needs to complete his sex offender program. There has been some engagement, apparently, with the social worker at the prison, discussion about what services are available.

The problem the Court sees is that based upon the current situation with [respondent] and his earliest release date of October 2022, I don't have an expectation that it would be reasonable for [WE] to have to wait that long, considering his age. I mean [WE]'s been in care almost his entire life. He doesn't know his biological parents.

Additionally, regarding subsection (g) the trial court concluded:

[Respondent] is in prison. Financially he is not in a position to provide but we haven't heard any testimony that he has made any arrangements for others to provide as far as family members, or maybe relatives petitioning for a guardianship, or anything of that nature . . . .

Finally, regarding subsection (j) the trial court concluded:

I am clearly convinced that if I were to return the child to the care of either parent that [WE] would be emotionally harmed because of the bond that he has with his current care providers and the fact that he doesn't really know his parents, so I do find that that would be traumatic to return this child to someone that he doesn't know.

---

[2] *In re Mason*, 486 Mich 142; 782 NW2d 747 (2010).

* * *

> It appears to me that [respondent] will exceed a two-year incarceration and has not provided for his child or would be able to within a reasonable time, considering again [WE]'s age.

This appeal followed.

## II. ANALYSIS

This Court "reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709-710; 846 NW2d 61 (2014). To be clearly erroneous, a trial court's determination must be more than possibly or probably incorrect. *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011). This Court also must consider "the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *Id*.

The trial court found three statutory grounds for terminating respondent's parental rights, MCL 712A.19b(3)(c)(*i*), (g), and (j). We will address each statutory ground in turn, beginning with MCL 712A.19b(3)(c)(*i*). MCL 712A.19b(3)(c)(*i*) authorizes a trial court to terminate parental rights if it finds by clear and convincing evidence that:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
>> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

The trial court terminated respondent's parental rights under this statutory ground due to respondent's incarceration. Respondent argues that the trial court erred by doing so because, under *In re Mason*, 486 Mich at 160, a parent's parental rights cannot be terminated solely because the parent is incarcerated. Petitioner agrees with respondent that the trial court improperly based its (c)(*i*) decision on respondent's incarceration. Under *In re Mason*, "[t]he mere present inability to personally care for one's children as a result of incarceration does not constitute grounds for termination." *Id*. A respondent's incarceration "exceeding two years" is explicitly a factor when terminating parental rights under MCL 712A.19b(3)(h), but neither the petitioner nor the trial court relied on that provision, and respondent's earliest release date is October 2022.

Thus, respondent's incarceration was the condition that led to the initial adjudication, but, under *In re Mason*, that condition alone is not sufficient to terminate his parental rights. See *id*. Respondent's failure to provide for WE was not the condition that led to the adjudication and, therefore, that factor cannot be used to fulfill (c)(*i*)'s requirements. Accordingly, the trial court erred by terminating respondent's parental rights under MCL 712A.19b(3)(c)(*i*).

Next, we turn to MCL 712A.19b(3)(g), which authorizes the trial court to terminate a respondent's parental rights if:

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

The trial court concluded that these requirements were met here:

[Respondent] is in prison. *Financially he is not in a position to provide* but we haven't heard any testimony that he has made any arrangements for others to provide as far as family members, or maybe relatives petitioning for a guardianship, or anything of that nature . . . . [Emphasis added.]

The trial court concluded that respondent could not financially provide for WE's care. Consequently, the trial court failed to make the necessary determination that respondent was financially able to care for WE. To the extent that requirement could be met through financial assistance from respondent's family, their potential assistance also cannot sustain this statutory ground. The trial court noted that respondent had not asked his family members to help him provide for WE. But there was also no evidence that respondent's family members had the financial ability to do so. Thus, although respondent has not provided for WE's care in any way up to this point, there was no evidence establishing that respondent had the financial ability to care for WE. Indeed, the trial court actually found that respondent *lacked* the financial ability to care for WE. Thus, the trial court erred by finding statutory grounds to terminate respondent's parental rights under MCL 712A.19b(3)(g) because it failed to make the necessary factual finding that respondent had the financial ability to care for WE.

Finally, we turn to MCL 712A.19b(3)(j), which authorizes the trial court to terminate a respondent's parental rights if:

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

Respondent argues that the trial court erred because it terminated his parental rights under MCL 712A.19b(3)(j) based on the emotional harm that would occur if WE was taken from his current caregiver, with whom he has lived his entire life. Petitioner agrees with respondent, but argues that the record nevertheless establishes facts sufficient to terminate respondent's parental rights under subsection (j). Subsection (j) requires the trial court to find that the child will be harmed "based on the conduct or capacity of the child's parent." Although emotional harm is covered under subsection (j), the harm must result from some conduct or capacity of the parent, not from the loss of a bond with another person (though this latter circumstance might well be relevant to the best-interests analysis). Thus, respondent and petitioner are correct that emotional harm caused by the child being removed from caregivers does not provide sufficient grounds here to terminate respondent's parental rights under subsection (j).

While there are concerns with placing WE in respondent's care given that respondent has never met WE and respondent is currently incarcerated, the trial court failed to make any findings that there is a reasonable likelihood that WE would be harmed. The trial court similarly failed to

address respondent's conduct or capacity to parent. The trial court should have considered these factors on the record so as to facilitate appellate review. Thus, the trial court clearly erred by terminating respondent's parental rights under MCL 712A.19b(3)(j) on this record.

The dissent argues that we should affirm the trial court's order terminating respondent's parental rights because any error was harmless under MCL 712A.19b(3)(h) and (m)(*i*). But neither statutory ground was addressed at the trial court level or by petitioner on appeal. Respondent addressed subsection (h) in his brief on appeal as a way to show that subsection (c)(*i*) does not apply in this case. Petitioner had an opportunity to respond to that argument, but it did not address subsection (h) in its response brief. And respondent did not address subsection (m)(*i*) in his brief on appeal, so the dissent raises that statutory ground sua sponte. The dissent, therefore, would affirm the trial court's termination order based on statutory grounds not addressed by the trial court and not raised by petitioner either at the trial-court level or now on appeal. This Court sits as an error-correcting court, and although a trial court's statutory-grounds findings are subject to harmless-error analysis, such an approach was not suggested by petitioner on appeal. In these circumstances, the better approach is to give the trial court and the parties an opportunity in the first instance to address whether termination of respondent's parental rights is appropriate under subsection (h), subsection (m)(*i*), or some other applicable subsection. We express no opinion regarding whether the subsections apply in this case and leave it to the trial court to address the issues on remand if petitioner seeks termination of respondent's parental rights on those or other grounds.

## III. CONCLUSION

For the reasons stated in this opinion, we vacate the trial court's order terminating respondent's parental rights to WE and remand for further proceedings consistent with this opinion. We express no opinion on whether respondent's parental rights should ultimately be terminated, either on the current record or an expanded record. Rather, we limit our review solely to the reasons given by the trial court when making its termination decision, which were insufficient. In the interest of expediency and efficiency, we retain jurisdiction.


/s/ Brock A. Swartzle
/s/ James Robert Redford

# Court of Appeals, State of Michigan

# ORDER

Brock A. Swartzle
Presiding Judge

In re W.W. Elkins, Minors

Kirsten Frank Kelly

Docket No. 357925

James R. Redford
Judges

LC No. 19-005937-NA

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court. We retain jurisdiction.

Proceedings on remand in this matter shall commence within 28 days of the date of this order, and they shall be given priority on remand until they are concluded. The trial court shall reconsider its order terminating respondent's parental rights as indicated in our opinion. The proceedings on remand are limited to this matter.

The parties shall promptly file with this Court a copy of all papers filed on remand. Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.

Brock A. Swartzle
Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

April 28, 2022
Date

Chief Clerk